IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN LEE AUTERY,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-4015 |
| | : | |
| **CLASSIFICATION OFC. MIKE MOORE,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                                                              **MARCH 7, 2023**

Plaintiff Jonathan Lee Autery, a pretrial detainee incarcerated at the George W. Hill Correctional Facility, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983. In his Second Amended Complaint, which is currently before the Court, Autery raises constitutional claims based on allegations that prison officials placed him in administrative segregation for prolonged periods of time without explanation or justification. Autery has already been granted leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss his Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Autery will be permitted to file a third amended complaint.

**I.        FACTUAL ALLEGATIONS**

Autery initiated this action by filing a Complaint in October of 2022. Before the Court could screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Autery filed an "Amendment Complaint," wherein he sought to add new allegations and new exhibits to his Complaint. (ECF No. 5.) In a January 5, 2023 Order, the Court construed the Amendment as an Amended Complaint, which superseded the original Complaint and rendered the original Complaint a

nullity.  (ECF No. 6 at 1 (citing *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).)[1]  The Court advised Autery that it is "'not authorized to permit piecemeal amendment or gradual supplementation of [the Complaint] over time, which is essentially what [Autery] attempt[ed] to do with the Amendment.'"  (*Id*. at 2 (quoting *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*).)   Because Autery, who is proceeding *pro se*, likely did not appreciate the consequences of filing the Amendment – that it would be construed as an Amended Complaint and replace and supersede his original Compliant – the Court permitted him to file "a complete and comprehensive second amended complaint in which he [could] bring all of his allegations, exhibits, and claims together in one pleading."  (*Id*.)

Autery returned with a Second Amended Complaint, which he completed by utilizing the Court's standard complaint form for filing a civil action pursuant to 42 U.S.C. § 1983.  Autery names the following Defendants in his Second Amended Complaint:  (1) George W. Hill Correctional Facility ("GWHCF"); (2) Mike Moore, Classification Officer; (3) Lt. J. McCafferty, Shift Commander; and (4) Mike Henneghan, Case Manager.  (Sec. Am. Compl. at 2-3.)  Autery alleges that beginning on March 16, 2022, and continuing until the present, he was "constantly [and] repeatedly put into segregation" without any apparent reason.  (*Id*. at 5.)  He states that he will be "segregated until [he] leave[s]" and that his segregation has persisted without explanation, and despite the absence of "incident reports . . . write-up[s], [or] investigations."  (*Id*.)

Autery alleges that he submitted grievances concerning his placement in segregation but that they were "ignored."  (*Id*. at 7.)  In a January 6, 2023 grievance, which is attached as an exhibit to the Second Amended Complaint, Autery requests "the reasons" for his placement in

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

segregation. (*Id*. at 13.) The grievance coordinator responded that Autery has "filed multiple grievances regarding [his] housing and [has] received responses" but reiterated that Autery is "currently housed for [his] safety." (*Id*.) Autery questions how safety can be a justification for his segregation when he has "done nothing to nobody" and has "no known enemies" at GWHCF. (*Id*.) Also attached to the Second Amended Complaint is a formal disciplinary report and hearing disposition form. (*Id*. at 16, 17.) The incident report relates to an incident that occurred on December 23, 2022 between Autery and a correctional officer, CO Garr. (*Id*. at 16.) CO Garr reports that while escorting Autery back to his cell, Autery "yelled" that he needed to speak to the sergeant, kicked the door to the control room, "made several attempts to kick" CO Garr, and threatened CO Garr. (*Id*.) The hearing disposition form reveals that a hearing on this incident occurred on January 4, 2023, and that "based on the evidence provided, Autery [was] found guilty." (*Id*. at 17.) As discipline, Autery was sentenced to "disciplinary detention for a period of fifteen days." (*Id*.)

Autery also complains about the conditions of his confinement in segregation, contending that he "cannot get things like commissary." (*Id*. at 15.) He states that he has limited use of the telephone, is only permitted showers three days a week and recreation time five days a week, and is not allowed to have recreation time or showers on the weekend. (*Id*.) Finally, Autery alleges that while in segregation, he only has access to his legal mail. (*Id*.) Based on these allegations, Autery asserts constitutional claims under § 1983.[2] For relief, he seeks money damages for

---

[2] Autery cites the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Sec. Am. Compl. at 3.) The Second Amended Complaint contains no allegations to support a Sixth Amendment claim. In addition, because Autery is a pretrial detainee in state custody, his claims are governed by the Fourteenth Amendment and not the Eighth and Fifth Amendments. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

"pain and suffering, discrimination [and] sexual harassment" (Sec. Am. Compl. at 5.)[3]

## II. STANDARD OF REVIEW

As Autery is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Second Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Autery is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Autery asserts constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under

---

[3] There are no allegations in the Second Amended Complaint describing discrimination or sexual harassment. Accordingly, to the extent Autery intended to bring any independent claims based on alleged discrimination or sexual harassment, those claims are dismissed for failure to state a claim because they are inadequately pled.

§ 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

      A.      **Claims against GWHCF**

Autery names GWHCF as a Defendant; however, a prison or correctional facility is not a "person" under § 1983.  *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009).  Accordingly, Autery's claims against GWHCF must be dismissed with prejudice because GWHCF "is not a legal entity susceptible to suit." *See Cephas*, 2010 WL 2854149, at *1; *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (*per curiam*) (district court properly concluded that a county prison is not "person" within meaning of section 1983).

**B.     Official Capacity Claims**

Autery has named all Defendants in their official as well as individual capacities. (*See* Compl. at 2-3 (checking box for official capacity and individual capacity claims).) Claims against GWHCF prison officials – Moore, McCafferty, and Henneghan – are indistinguishable from claims against the municipality that employs them, Delaware County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n.55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*.

To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipal entity's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To the extent that Autery seeks damages against Moore, McCafferty, and Henneghan in their official capacities, he has failed to state a plausible *Monell*/official capacity claim. Nowhere in the Complaint does Autery allege a municipal policy or custom, or that such a policy or custom caused his constitutional harm. Accordingly, all

official capacity claims against Moore, McCafferty, and Henneghan will be dismissed without prejudice.

### C. Individual Capacity Claims

Autery also asserts claims against Defendants in their individual capacities. He alleges that he was housed in segregation without explanation, that his ability to take showers, use the telephone, and engage in recreation time was limited, and that he was denied access to non-legal mail. The Court understands Autery to be asserting Fourteenth Amendment due process claims related to his time housed in segregation and First Amendment claims related to limitations on his access to the telephone and non-legal mail. As set forth below, Autery fails to allege plausible individual capacity claims in his Second Amended Complaint.

#### 1. Placement in Segregated Housing

The crux of Autery's Second Amended Complaint is that he has been in segregated housing since March of 2022 without justification and without being provided a reason. Based on the limited facts alleged, it is not clear whether Autery was placed in disciplinary segregation, administrative segregation, or both at varying times. The standards Courts utilize to consider due process claims by pretrial detainees differs depending on the type of restrictive housing alleged.

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Generally, prison officials' "restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in

7

light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007) (alterations in original)).

"Punishment" in this context refers to "punishment of a pretrial detainee for his alleged criminal conduct, committed *prior* to his detention, for which he has not yet been committed." *Id.* (emphasis in original). It does not refer to punishment of a pretrial detainee "for his in-facility conduct." *Id.* at 505. In other words, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levy*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

Fewer due process protections are required for placement in administrative segregation. *Stevenson*, 495 F.3d at 70 (explaining that "greater process [is] accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons"

(alteration added)).  This is because "maintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions."  *Steele*, 855 F.3d at 505.  In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed.  *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").  When a detainee's placement is for administrative purposes, "the minimal procedures outlined in *Hewitt v. Helms*, 459 U.S. 539 (1983) are all that is required.  *Lewis v. Williams*, No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70).  *Hewitt* requires that, within a reasonable time, a detainee be explained the reason for the administrative placement as well as an opportunity to respond.  *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations omitted).  "[T]he opportunity to respond can be satisfied by written grievances."  *Kanu*, 739 F. App'x at 117.

Autery alleges that for nearly a year, he was "constantly and repeatedly" placed in segregation.  (Sec. Am. Compl. at 5.)  He further alleges that he was given no explanation for the segregation, including not being provided any incident reports to justify his placement in segregation.  Autery fails to state a Fourteenth Amendment due process claim.  He has not provided sufficient facts about his alleged confinement.  He alleges vaguely that he has been "constantly and repeatedly" placed in segregation since March of 2022, but does not state

9

specifically when those periods of restricted housing took place, how long each period of segregation lasted, and whether the housing was for disciplinary or administrative reasons.

Autery also fails to allege whether any process was provided to him for each period of segregation, and why he believes the process provided was inadequate. While Autery states that he is repeatedly deprived of answers to his inquiries, the exhibits Autery attaches to his Second Amended Complaint contradict this allegation and reveal that at least some process has been provided to Autery. He was notified in a grievance response that he was housed for safety reasons. He was also provided a hearing to address the incident with CO Garr. To the extent that Autery contends that the incident report by CO Garr was somehow false or fraudulent, this does not by itself support a due process claim. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); *King v. Quigley*, No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based "solely on the basis that he believe[d] the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections).

Autery's due process claims also fail because he has not alleged any facts specifically tying such claims to a named individual Defendant. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Aside from naming Defendants in the Complaint, Autery does not state how any

of the named Defendants were personally involved in the alleged violation of his rights.[4]

Autery's allegations as pled, therefore, are insufficient to state a constitutional claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).

### 2. Conditions of Confinement in Segregation

Autery also appears to assert claims based on alleged restrictions placed on his ability to use the commissary, take showers, and engage in out of cell recreation time while in segregated housing. The Court understands Autery to be alleging Fourteenth Amendment due process claims based on the conditions of his confinement in segregation. As noted above, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment. *Bell*, 441 U.S. at 535; *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("Under the Due Process Clause [of the Fourteenth Amendment], a pretrial detainee 'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). To establish a basis for a Fourteenth Amendment violation based on prison conditions, a pretrial detainee must allege that his conditions of confinement amount to punishment. *See Bell*, 441 U.S. at 538; *see also Camps*,

---

[4] In response to the question on the standard form complaint about how each defendant acted under color of state law, Autery stated: "I must refer you back to my original complaint." (Sec. Am. Compl. at 4.) As explained above, the Court will not consider allegations from his prior Complaint and Amendment. *See supra* § I.

11

843 F. App'x at 452 ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). In that regard, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian*, 696 F.3d at 373 (citation and internal quotation omitted); *Steele*, 855 F.3d at 504. Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard*, 538 F.3d at 233 (internal quotations omitted).

      Autery alleges that when he is housed in segregation, he is denied commissary privileges, may only shower three days per week, and is only permitted recreation time out of his cell five days per week. Autery's claims about the conditions of his confinement in segregation fail as pled because, as noted above, he has not tied any Defendant's specific conduct to the alleged constitutional violations. In addition, he has not provided any details surrounding the alleged denial of commissary privileges, including when they were denied, for how long, whether the deprivation was sporadic or continuous, whether there was a reason given for the denial, and if he was able to purchase some items from the commissary but not others. Without additional information, the Court is unable to determine whether the denial of Autery's commissary privileges amounted to punishment under the Fourteenth Amendment. *See Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL 815444, at *12-13 (E.D. Pa. Mar. 17, 2022) (dismissing Fourteenth Amendment claim where plaintiff stated that he was prevented from purchasing commissary items during lockdown but failed to allege the extent and duration of the alleged deprivation).

With respect to limitations on his ability to shower and engage in out of cell recreation time, the facts alleged do not state plausible due process claims. Autery alleges that at most, he was deprived of a shower and recreation time only a few days at a time. This does not constitute the type of hardship that amounts to constitutional punishment. *See, e.g.*, *Coleman v. Hodges*, No. 18-1152, 2018 WL 6618459, at *7-8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, No. 18-1152, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) (holding that denial of shower and out of cell exercise for four days did not constitute Fourteenth Amendment violations); *Carroll v. George W. Hill Corr. Facility*, No. 22-1720, 2022 WL 17539212, at *1, 10 (E.D. Pa. Dec. 8, 2022) (holding that denial of shower for eight days while placed in intake cell did not constitute a Fourteenth Amendment violation); *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise.").

### 3. Telephone Use

Autery also complains about limitations on his ability to use the telephone while housed in segregation, stating that he is provided a "30 min phone call once." (Sec. Am. Compl. at 15.) Autery does not state how often he is provided that 30-minute call, whether daily, weekly, monthly. Nor does he provide any other facts about limitations on his ability to use the telephone or otherwise communicate with family or friends. To the extent that Autery asserts a First Amendment claim based on his access to the telephone, such claim is not plausible as pled. Although prisoners may have a limited First Amendment right to communicate with family and

friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)). "[A] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id*. (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).

Given the absence of facts about alleged limitations on his telephone use, and how those limitations interfered with his ability to communicate, Autery fails to state a plausible claim. *See Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim); *Almahdi*, 310 F. App'x at 522 (rejecting First Amendment claim based on telephone restrictions where "Almahdi makes no assertion—and there is no evidence — that he lacked alternative means of communicating with persons outside the prison") (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)).

### 4. Denial of Access to Non-Legal Mail

Finally, to the extent that Autery alleges that lack of access to his non-legal mail violates his First Amendment rights, he also fails to state a plausible claim. Generally, "[p]risoners have a First Amendment right to communicate with the outside world by sending and receiving mail." *Liptok v. Mason*, No. 21-1475, 2022 WL 214341, at *2 (M.D. Pa. Jan. 24, 2022) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989), *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006)). Prison regulations that affect a prisoner's receipt of non-legal mail may violate the First Amendment "if not 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Turner*

*v. Safley*, 482 U.S. 78, 89 (1987)). Although Autery vaguely complains that he is unable to access is non-legal mail, he does not provide any details about his lack of access, including when he was allegedly deprived his non-legal mail and whether any reason was provided for that deprivation. Finally, for the same reasons Autery's other claims fail, he does not allege any facts tying his denial of non-legal mail to a specifically-named Defendant.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Autery's Second Amended Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[5] Autery's claims against GWHCF will be dismissed with prejudice. The remainder of the Second Amended Complaint will be dismissed without prejudice. Autery will be given leave to file a third amended complaint in the event he can cure the defects in his claims.

An appropriate Order follows, which provides additional instruction as to amendment.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**

---

[5] Subsequent to filing his Second Amended Complaint, Autery filed a document that purports to add allegations and increase the amount of money damages sought, which was docketed as an "Amended Complaint." (*See* ECF No. 8.) The document also attaches various grievances as exhibits. Nothing in this additional submission alters the Court's conclusion that Autery fails to state a plausible § 1983 claim. If Autery decides to pursue a third amended complaint, he must include all allegations in <u>one single third amended complaint</u> and may not attempt to amend that operative pleading gradually with addendums, amendments, or supplements.