IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN LEE AUTERY,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-4015 |
| | : | |
| **CLASSIFICATION OFC. MIKE** | : | |
| **MOORE,** *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM

**SCHMEHL, J.** /s/ JLS                                                                    **JULY 21, 2023**

      Plaintiff Jonathan Lee Autery, a pretrial detainee incarcerated at the George W. Hill Correctional Facility, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983. The Court previously dismissed Autery's Second Amended Complaint without prejudice. Autery returned with a Third Amended Complaint. For the following reasons, the Court will dismiss certain claims and Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim and direct service of the Third Amended Complaint so Autery can proceed on his claims against the remaining Defendant.

I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

      In his Second Amended Complaint, Autery named four Defendants: (1) George W. Hill Correctional Facility ("GWHCF"); (2) Mike Moore, Classification Officer; (3) Lt. J. McCafferty, Shift Commander; and (4) Mike Henneghan, Case Manager.[1] Autery alleged in his Second

---

[1] Autery initiated this action by bringing a Complaint in October of 2022. Before the Court could screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Autery filed an "Amendment Complaint," wherein he sought to add new allegations and new exhibits to his Complaint. (ECF No. 5.) In a January 5, 2023 Order, the Court construed the Amendment as an Amended Complaint, which superseded the original Complaint and rendered the original Complaint a nullity. (ECF No. 6 at 1 (citing *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir.

Amended Complaint that beginning on March 16, 2022, he had been "constantly [and] repeatedly put into segregation" without any apparent reason. (Sec. Am. Compl. 5.)² Autery also alleged that he endured unconstitutional conditions of confinement in segregation, such as a lack of access to the commissary and non-legal mail and a limited access to the telephone, showers, and out-of-cell recreation time. (*Id*. at 15.) Based on these allegations, Autery asserted constitutional claims under § 1983.

In a March 7, 2023 Memorandum, the Court dismissed Autery's Second Amended Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. *See Autery v. Moore*, No. 22- 4015, 2023 WL 2390670, at *7 (E.D. Pa. Mar. 7, 2023). The Court dismissed all claims against GWHCF because a prison is not a legal entity susceptible to suit under § 1983. *Id*. at 3. The Court also dismissed all official capacity claims against the Defendants because claims against GWHCF prison officials are indistinguishable from claims against the municipality and Autery failed to plead a plausible *Monell*/official capacity claim. *Id*. The Court also dismissed Autery's Fourteenth Amendment due process claims because he failed to allege sufficient facts about his alleged confinement in segregation, including whether it was for disciplinary or administrative reasons. *Id*. at *4-5. The Court also dismissed all of Autery's

---

2019).) The Court advised Autery that it is "'not authorized to permit piecemeal amendment or gradual supplementation of [the Complaint] over time, which is essentially what [Autery] attempt[ed] to do with the Amendment.'" (*Id*. at 2 (quoting *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*).) Because Autery, who is proceeding *pro se*, likely did not appreciate the consequences of filing the Amendment – that it would be construed as an Amended Complaint and replace and supersede his original Compliant – the Court permitted him to file "a complete and comprehensive second amended complaint in which he [could] bring all of his allegations, exhibits, and claims together in one pleading." (*Id*.) Autery returned with a Second Amended Complaint, which he completed by utilizing the Court's standard complaint form for filing a civil action pursuant to 42 U.S.C. § 1983.

² The Court adopts the pagination supplied by the CM/ECF docketing system.

claims about the conditions of his confinement while in segregation, such as claims based on restrictions on his ability to use the commissary, take showers, engage in out-of-cell recreation time, use the telephone, and access non-legal mail. *Id*. at *6-7. The Court concluded that Autery failed to allege sufficient facts to support these conditions of confinement claims and failed to tie any Defendant's specific conduct to the alleged contstitutional violations. *Id*. The Court provided Autery with an opportunity to cure the deficiencies by filing a third amended complaint.

Autery returned with a Third Amended Complaint.[3] He again names Moore, McCafferty, and Henneghan as Defendants. He also adds Warden Laura K. Williams as a Defendant. Autery appears to raise similar allegations in his Third Amended Complaint about the prolonged placement in segregation in violation of his due process rights. These allegations form the basis for his claims[4]

The factual allegations raised in the Third Amended Complaint are at times disjointed, scattered, and difficult to understand. Despite the confusing nature of his allegations, the Court understands Autery to be alleging that he was placed in segregation during different time periods, each time without justification or explanation. Specifically, Autery alleges that in March 2022, after a "mutual altercation" with his cellmate, Autery was placed in disciplinary segregation for twenty days. (Third Am. Compl. at 13, 19.) After the 20-day period of

---

[3] Attached to the Third Amended Complaint are grievance-related documents, a letter from his case manager, and an excerpt from the prison handbook. (*See* Third Am. Compl. at 18-23.)

[4] Autery also alleges that "the George W. Hill Correctional Facility has . . . caused [] unsafe and unhealthy living conditions." (Third Am. Compl. at 12.) However, he offers no facts about those alleged unsafe and unhealthy living conditions. Autery's conclusory allegations do not support a plausible claim based on these alleged conditions of his confinement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

segregation, however, he was not released. (*Id*.) Autery states that Defendant Mike Moore "did not [let] him out of segregation" and "had to override the computer date" in order to keep him in segregation. (*Id*. at 13.) He further alleges that he stayed in segregation until June 2022 even though Defendant Lt. J. McCafferty, the shift commander, never received a write-up about Autery. (*Id*.) Autery asked Defendant Mike Henneghan, a case manager, why he had been in segregation and Henneghan replied that it was because Autery was gay. (*Id*. at 14.)

When Autery was released from segregation, he was placed in a cell by himself. (*Id*. at 13.) At that time, the "sexual assault[s]" began and continued until at least the time the Third Amended Complaint was drafted. (*Id*. at 13-14.) Autery alleges that he was called names such as "He-She" and "Gay Boy." (*Id*. at 14.) He also alleges that he received threats from inmates "all day long" until "one day the inmates acted on the threats." (*Id*.) He does not say how they acted on the threats. Autery was then moved to another cell where he had a cellmate. (*Id*.) When a floor officer heard Autery and his cellmate "cursing at each other," Autery was moved to the Special Management Unit ("SMU"), which he also refers to as "single cell seg." (*Id*.) Autery alleges he was placed in segregation this time without any write-ups and that this constituted "false imprisonment, illegal incarceration, forced compliance, involuntary servitude," discrimination, slander, and cruel and unusual punishment. (*Id*.) This period of segregation allegedly lasted from the end of June 2022 until the beginning of August 2022. (*Id*.)

At some point in August 2022, Autery was moved to the D-Pod. There, the "physical abuse, sexual assault, and discrimination" allegedly continued. (*Id*. at 15.) In September of 2022, an inmate threw feces on him. (*Id*.) The inmate was not charged or written up but Autery was placed back in the SMU where he remained for five months, until February of 2023. (*Id*.) In segregation, Autery wrote grievances to Defendant Laura K. Williams, the GWHCF Warden,

who "advised [Autery] that [he] was there because of [his] safety." (*Id*.) Autery alleges, however, that "none of the incidents were recorded with video surveillance" and there were no written reports. (*Id*.) Autery repeatedly submitted grievances asking why he was still in segregation even though he "had no known enemies" at GWHCF. (*Id*.) He alleges that Warden Williams abused her power by keeping him in segregation. (*Id*. at 16.)

Attached as an exhibit to the Third Amended Complaint is a September 15, 2022 letter to Autery from Williams. (*Id*. at 21.) In the letter, Williams responds to Autery's grievance regarding his "housing/classification":

> This facility and its staff maintain an obligation to the safety of you and all incarcerated persons. It is incumbent on the facility to ensure that safe and adequate housing is provided. Though you are objecting to your housing determination, staff are following policies and procedures for your placement.
>
> As an individual that resides on SMU-B, you will be evaluated continuously to make appropriate housing determinations.

(*Id*.) Autery handwrites on the letter: "I did nothing but they took away my privilege [without] write-up." (*Id*.)

Based on these allegations, Autery asserts constitutional claims under § 1983.[5] For relief, he seeks money damages. (Third Am. Compl. at 5.)

## II. STANDARD OF REVIEW

As Autery is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Third Amended Complaint if it fails to state a claim. Whether a

---

[5] Autery again cites the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Third Am. Compl. at 3.) The Third Amended Complaint contains no allegations to support a Sixth Amendment claim. In addition, because Autery is a pretrial detainee in state custody, his claims are governed by the Fourteenth Amendment and not the Eighth and Fifth Amendments. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Autery is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

In his Third Amended Complaint, Autery again asserts constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.  Official Capacity Claims

Autery has again named all Defendants in their official as well as individual capacities. (*See* Third Am. Compl. at 2-3 (checking box for official capacity and individual capacity claims).)  As the Court explained in its March 7 Memorandum, "claims against GWHCF prison officials" – here, Moore, McCafferty, Henneghan, and Williams – "are indistinguishable from claims against the municipality that employs them, Delaware County."  *Autery*, 2023 WL 2390670, at *3 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  In other words, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166.

To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipal entity's policy or custom caused the violation of his constitutional rights.  *See Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  Autery has again failed to state a plausible *Monell*/official capacity claim.  Nowhere in the Third Amended Complaint does Autery allege a municipal policy or custom, or that such a policy or custom caused his alleged constitutional harm.  Accordingly, all claims against Moore, McCafferty, Henneghan, and Williams in their official capacity will be dismissed.

### B.  Claim against Mike Moore

Autery's claim against Moore relates to Autery's placement in disciplinary segregation in March of 2022 for an altercation he had with a cellmate.  The Court understands Autery to be asserting a Fourteenth Amendment due process claim against Moore.  As the Court explained in its March 7 Memorandum, "[p]retrial detainees are protected from 'punishment' by the Due

Process Clause of the Fourteenth Amendment." *Autery*, 2023 WL 2390670, at *3 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Generally, prison officials' "restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007) (alterations in original)).

"Punishment" in this context refers to "punishment of a pretrial detainee for his alleged criminal conduct, committed *prior* to his detention, for which he has not yet been committed." *Id.* (emphasis in original). It does not refer to punishment of a pretrial detainee "for his in-facility conduct." *Id.* at 505. In other words, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levy*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least

24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id*. (citing *Wolff*, 418 U.S. at 563-66).

Autery alleges that in March 2022, he received 20 days of disciplinary segregation as punishment for an altercation he had with his cellmate but that after the 20 days lapsed, Moore did not release him from segregation. Autery further alleges that "a computer would have told [Moore] that [Autery's] time was up" but that Moore "had to override the computer date" in order to keep him in segregation. (Third Am. Compl. at 13.) A March 16, 2022 "Hearing Disposition Form" attached to the Third Amended Complaint confirms that Autery was "found guilty" of "fighting" and received a "disciplinary detention for a period of 20 days" as punishment. (*Id*. at 20.) Autery states that he was not released from segregation until the first week of June 2022, which is well beyond the 20-day punishment he received. Autery has stated a plausible due process claim against Moore based on his prolonged stay in disciplinary segregation. This claim will be served for a responsive pleading.

      **C.**    **Claims against Henneghan and McCafferty**

The facts alleged against McCafferty and Henneghan are sparse. Autery alleges that after he was placed in disciplinary segregation in March 2022, McCafferty, a shift commander, never received a write-up about Autery. Autery also alleges that after he was released from segregation in June 2022, he asked Henneghan, his case manager, why he was in segregation and Henneghan responded that it was because Autery was gay. The constitutional claims Autery intends to assert against these Defendants is not clear. To the extent that Autery asserts Fourteenth Amendment due process claims against them based on his time in disciplinary segregation, the claims fail.

As the Court noted above and in its March 7 Memorandum, to survive dismissal, Autery must allege how each defendant was involved in the events and occurrences giving rise to his claims. *See Autery*, 2023 WL 2390670, at *2; *Rode*, 845 F.2d at 1207. The Third Amended Complaint contains no allegations to support a plausible inference that either Defendant was in any way involved in the altercation leading up to Autery's segregation, the decision to punish Autery for that altercation, the hearing at which Autery was ultimately found guilty of fighting, or the decision to keep Autery housed in segregation beyond the 20-day period of punishment he received. Moreover, there are no allegations that either Defendant personally directed that Autery remain in disciplinary segregation or that they even knew that Autery remained in segregation beyond his 20-day punishment and nevertheless acquiesced in his prolonged placement. Accordingly, the claims against these Defendants are dismissed. *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Caratini v. Powell*, No. 20-8924, 2022 WL 2473443, at *4 (D.N.J. July 6, 2022) (dismissing due process claim where the plaintiff does not allege that the defendant "was involved in falsifying the charges against him nor does he allege that she knew he had been exonerated of the charge but refused to release him from disciplinary segregation").

D.  **Claim against Williams**

Autery's allegations against Warden Williams relate to Autery's five-month placement in segregation beginning in September 2022.[6] Autery wrote grievances to Williams about his

---

[6] Autery alleges that he was also placed in segregation from June 2022 through August 2022. However, Autery has not alleged that any of the named Defendants were involved in any way in this placement. The only individual alleged to be involved during this time period was an unnamed "floor officer." (*See* Third Am. Compl. at 13.)

placement, to which Williams responded that Autery was placed in segregation for his safety. In a September 2022 letter to Autery, Williams states that his placement was intended for safety and that prison staff were following policies and procedures. Autery alleges that he "did nothing" to deserve segregation and that Williams was abusing her power by keeping him there. The Court understands Autery to be asserting a Fourteenth Amendment due process claim against Williams. Based on Autery's allegations, it appears that his September 2022 placement in segregation was for administrative purposes and not disciplinary ones. Autery alleges that he did not commit any infraction warranting disciplinary segregation. Moreover, Autery's placement in segregation followed shortly after alleged physical abuse, sexual assault, and an incident involving an inmate throwing feces on him. In addition, Williams confirms Autery's placement was for his safety. There are no allegations that suggest Autery's placement in the SMU in September 2022 was intended as punishment for any in-facility misconduct that he committed while awaiting trial.

As the Court explained in its March 7 Memorandum, "[f]ewer due process protections are required for placement in administrative segregation." *Autery*, 2023 WL 2390670, at *4; *Stevenson*, 495 F.3d at 70 (explaining that "greater process [is] accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons" (alteration added)). This is because "maintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Steele*, 855 F.3d at 505. In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials

11

that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry"). When a detainee's placement is for administrative purposes, "the minimal procedures outlined in *Hewitt v. Helms*, 459 U.S. 539 (1983) are all that is required." *Lewis v. Williams*, No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). *Hewitt* requires that, within a reasonable time, a detainee receive an explanation of the reason for the administrative placement as well as an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations omitted). "[T]he opportunity to respond can be satisfied by written grievances." *Kanu*, 739 F. App'x at 117.

Autery fails to state a plausible Fourteenth Amendment claim against Williams. As noted above, based on Autery's own allegations, it is apparent that his placement in SMU beginning in September 2022 was for administrative and not disciplinary purposes. Autery's allegations also reveal that he was provided adequate due process protections for that administrative placement. Autery alleges that in September 2022, he was advised by Williams that his placement in segregation was for safety reasons. He also alleges that he continued to submit grievances about his classification. *See id*. A prisoner's safety is a legitimate managerial concern. *See Steele*, 855 F.3d at 505; *Kanu*, 739 F. App'x at 118. Autery alleges that while he was housed in regular population, he endured physical abuse, sexual assault, discrimination, and an incident where feces was thrown on him by another inmate. Autery also states that he was subjected to "constant, irreverent, continuous assaults" since as early as March 2022. (Third Am. Compl. at 12.) Based on these allegations, a due process claim is not viable because Autery's safety was a legitimate managerial concern warranting his placement in segregation and because there are no allegations suggesting that his segregation was otherwise intended as punishment. *See Stevenson*

12

*v. Carroll*, No. 04-139, 2011 WL 6842955, at *14 (D. Del. Dec. 29, 2011) (holding that pretrial detainee's placement in SHU for more than a year was rationally related to legitimate government purpose of maintaining his safety and the safety of the prison, was not excessive in light of that purpose, and was not intended to punish the detainee), *aff'd*, 474 F. App'x 845 (3d Cir. 2012). Accordingly, the Fourteenth Amendment due process claim against Williams will be dismissed.

### E. Claims for Sexual Assault, Slander, and Discrimination

Autery makes passing references to sexual assault, slander, and discrimination. However, he alleges no facts to support these claims. Specifically, nowhere in the Third Amended Complaint does Autery describe any instance of sexual assault. To the extent he intended to assert claims based on name-calling and verbal threats, the claims fail because these are insufficient to violate the constitution. *See McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim."); *Bower v. Price*, No. 17-1473, 2018 WL 1334985, at *3 (M.D. Pa. Mar. 15, 2018) (collecting cases and holding that alleged verbal sexual harassment alone does not give rise to a constitutional violation).

To the extent that Autery intended to assert an equal protection claim by referencing discrimination, the claim fails. Autery does not allege that he is a member of a protected class and suffered discrimination that was motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995). Nor does he allege that he was treated differently from others similarly situation, and that the Defendants acted intentionally without a rational basis. *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others

13

similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment").

Finally, although Autery repeatedly uses the word "slander" throughout the Third Amended Complaint, he never articulates what was said that he believes is slanderous and who said it. To the extent that Autery intended to assert slander claims based on allegations that he was called names such as "He-She" and "Gay Boy," the claims are dismissed because Autery does not allege that any of the named Defendants called him these or other names. To the extent he bases a slander claim against Henneghan for stating that Autery was gay, such a claim also fails because Autery does not allege how the statement is defamatory or that it was spoken to anyone other than to Autery. *See* 42 Pa. Cons. Stat. Ann. § 8343(a) (listing requirements for a defamation claim under Pennsylvania as including "[t]he defamatory character of the communication" and "[i]ts publication by the defendant"); *see also Cushman v. Trans Union Corp.*, 115 F.3d 220, 230 (3d Cir. 1997) ("Publication consists of the communication of the information to at least one person other than the person defamed."); *Rossi v. Schlarbaum*, 600 F. Supp. 2d 650, 662 n.3 (E.D. Pa. 2009) (noting that "defamation has two forms: slander (oral defamation) and libel (written defamation)"). Accordingly, any claims based on sexual abuse, discrimination, and slander are dismissed as insufficiently pled.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss in part Autery's Third Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Autery's claims against Henneghan, McCafferty and Williams will be dismissed. Autery's Fourteenth Amendment due process claim asserted against Moore in his individual capacity passes statutory screening and will be served for a responsive pleading.

An appropriate Order follows.

                                        **BY THE COURT:**

                                        **/s/ Jeffrey L. Schmehl**
                                        **JEFFREY L. SCHMEHL, J.**